## UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

JUDITH SCRUGGS, ADMINISTRATRIX  :
OF THE ESTATE OF J. DANIEL       :
SCRUGGS,                         :
     Plaintiff,                 :
                                :
vs.                              :     Case No. 3:03CV2224 (PCD)
                                :
MERIDEN BOARD OF EDUCATION,      :
ELIZABETH RUOCCO, individually and :
As Meriden Superintendent of Schools, :
MARY BETH IACOBELLI,             :
Individually and as Vice Principal and :
DONNA MULE individually and as   :
school guidance counselor        :
     Defendants.

### RULING ON DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Pursuant to Rules 12(c) and 12(h)(3) of the Federal Rules of Civil Procedure, Defendants Meriden Board of Education, Elizabeth Ruocco, Mary Beth Iacobelli, and Donna Mule move for Judgment on the Pleadings [Doc. No. 50]. For the reasons that follow, Defendants' Motion is **granted in part and denied in part**.

## I.    BACKGROUND

The following facts as alleged in the Complaint are assumed true for the purposes of this motion. Plaintiff's son, J. Daniel ("J.D."), was enrolled as a student at the Washington Middle School ("Washington"), a public school in Meriden, Connecticut. (Compl. ¶ 8.) Defendant Meriden Board of Education ("Board") maintains and operates Washington pursuant to Chapter 170 of Connecticut General Statutes. (Id. ¶ 4.) The Board operates and maintains the school in compliance with Connecticut General Statutes § 10-240 et seq. and receives funds from both the state and federal governments.

(<u>Id.</u> ¶¶ 4, 13-14.)  Defendant Elizabeth Ruocco ("Ruocco"), at all relevant times, was employed by the Board as Superintendent of Schools for Meriden. (<u>Id.</u> ¶ 5.)  Defendants Mary Beth Iacobelli ("Iacobelli") and Donna Mule ("Mule") were also employed by the Board as Vice Principal and Guidance Counselor at Washington, respectively, at all relevant times. (<u>Id.</u> ¶¶ 6-7.)

J.D. was diagnosed with a learning disability and was enrolled in the Special Education Program at Washington at "various times" beginning in March of 1997. (<u>Id.</u> ¶ 10.)  He was identified as an individual with a disability under 29 U.S.C. § 705(20), a qualified individual with a disability under 42 U.S.C. § 12131, and as a child with an identifiable learning disability and/or a neurological impairment as defined by Connecticut General Statutes § 10-76a and Regulations of Connecticut State Agencies § 10-761-2. (<u>Id.</u> ¶¶ 10-12.)  J.D. was also covered by the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. § 1400 <u>et</u> <u>seq.</u> (<u>Id.</u> ¶ 12.)  Under the IDEA, he was entitled to a "free and appropriate public education," which includes an individualized education program ("IEP"). (<u>Id.</u> ¶¶ 16-17.)  An IEP is a written statement developed in a meeting of school personnel, parents and, when appropriate, the student, for each child with a disability. 20 U.S.C. § 1401(A)(20) (West 2005).  An IEP addresses the student's present level of performance, annual goals and instructional objectives, the educational services to be provided to the student and the method for evaluating whether instructional objectives are met. <u>Id.</u>  This case arises out of Defendants' alleged violations of J.D.'s rights under these state and federal statutes and the United States Constitution.

Plaintiff claims that Defendants violated J.D.'s rights under the IDEA by improperly exiting him from special education services in April of 2000, failing to refer

him to a planning and placement team meeting ("PPT") in the sixth grade, not undertaking the proper evaluations and assessments of J.D.'s needs, failing to conduct a required triennial evaluation, and failing to develop an IEP. (Compl. ¶ 45.)  She also alleges that Defendants failed to adequately supervise and protect J.D. from known harassment, bullying, and assaults. (Id. ¶¶ 43, 45-46.)

Plaintiff claims that fellow students bullied, harassed, and threatened J.D. as a result of his disability.  She contends that Defendants knew or should have known of the problem that caused J.D. to miss thirty-seven days of school in the sixth grade. (Id. ¶¶ 22-23.)  In seventh grade, the situation worsened when a student (who had assaulted the plaintiff the year before while she worked as a paraprofessional at the school) was placed in J.D.'s class and was seated behind him. (Id. ¶¶ 24-27.)  Although Plaintiff complained to Defendant Iacobelli, she refused to move the student. (Id. ¶ 28.)  As this student and others continued to bully and harass J.D., he again became excessively absent from school. (Id. ¶ 31.)

On October 15, 2001, Plaintiff met with Defendants Iacobelli and Mule to address the bullying situation, yet soon thereafter, J.D. was involved in an altercation with a student who had been bullying him along with other students. (Id. ¶¶ 32-33.)  The next week, J.D. was transferred to a program for socially and emotionally troubled children within the school; this change was made without a PPT meeting or an evaluation of J.D. (Id. ¶¶ 34-35.)  The bullying problem continued, however, and in November 2001, students were referred to the office as a result of assaults on J.D. (Id. ¶ 37.)

Finally, in December 2001, there was a PPT to address J.D.'s attendance, hygiene, and other behavior.  At the meeting, Plaintiff again raised concerns about the

bullying and assaults, citing specific instances in which J.D. was "punched, kicked, had desks slammed into him, and had his hair pulled so violently that his head snapped back." (Id. ¶¶ 38-40.)  Plaintiff agreed to have the school test J.D. in certain areas to assess his learning and social skills. (Id. ¶ 41.)  These tests were never scheduled and thus were not conducted. (Id. ¶ 42.)  On January 2, 2002, J.D. committed suicide. (Id. ¶ 43.)

Plaintiff instituted this action against Defendants on December 22, 2003, alleging violations of 42 U.S.C. § 1983 for deprivations of J.D.'s rights under federal and state law and the Fourteenth Amendment of the United States Constitution, conspiracy to deprive J.D. of due process and equal protection under 42 U.S.C. § 1985 and common law, failure to prevent a violation of J.D.'s constitutional rights under 42 U.S.C. § 1986, violations of the Rehabilitation Act, 29 U.S.C. § 794 and the American with Disabilities Act, 42 U.S.C. § 12101 et seq., and a common law negligence claim under state law. Defendants move to dismiss all five counts of Plaintiff's Complaint.

## II.    STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial . . . ."  "The test for evaluating a 12(c) motion is the same as that applicable to a motion to dismiss under Fed. R. Civ. Proc. 12(b)(6)." Irish Lesbian and Gay Org. v. Giuliani, 143 F.3d 638, 644 (2d Cir. 1998).  The allegations of the complaint are accepted as true, and all inferences are drawn in favor of the nonmoving party. Id.; see also King v. Am. Airlines, Inc., 284 F.3d 352, 356 (2d Cir. 2002).  "A 12(c) motion will not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.'" Abrahams v. Young

& Rubicam, 979 F. Supp. 122, 125 (D. Conn. 1997) (citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).

## III.   DISCUSSION

Defendants move to dismiss all Counts in Plaintiff's Complaint on the grounds that: (1) the Court lacks subject matter jurisdiction, (2) the claims are time-barred by the statute of limitations, (3) Plaintiff has failed to state a claim upon which relief can be granted, (4) and Defendants are entitled to qualified, sovereign, and/or government immunity. The Court will address each of these arguments below.

### A.   Failure to Exhaust Administrative Remedies

Defendants move to dismiss Plaintiff's Complaint for failure to exhaust administrative remedies.  While the IDEA gives parents and students enforceable rights, it also requires them to exhaust administrative remedies prior to the commencement of a civil action. See 20 U.S.C. § 1415(l) (West 2005).  Under 20 U.S.C. § 1415, any state or local educational agency that receives funding under the IDEA must "establish and maintain procedures in accordance with this section to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education by such agencies." 20 U.S.C. § 1415(a) (West 2005).  This includes an opportunity for parents to present complaints regarding their child's educational placement. Id.

The exhaustion requirement is "intended to channel disputes related to the education of disabled children into an administrative process that could apply administrators' expertise in the area and promptly resolve grievances." Polera v. Bd. of Educ. of Newburgh, 288 F.3d 478, 486 (2d Cir. 2002) (internal citations omitted).  It also

5

"prevents courts from undermining the administrative process and permits an agency to bring its expertise to bear on a problem as well as to correct its own mistakes." Id. Failure to exhaust these channels deprives the federal court of subject matter jurisdiction. Id. at 482; Taylor v. Vt. Dept. of Educ., 313 F.3d 768, 789 (2d Cir. 2002) (internal citations omitted).

There are exceptions to this rule. "[E]xhaustion is not necessary under the IDEA where it would be futile to resort to due process procedures or where "it is improbable that adequate relief can be obtained by pursuing administrative remedies." Id. (internal citations omitted).  It is the plaintiff who bears the burden of demonstrating futility. Id. at 790.  Plaintiff does not claim she exhausted administrative remedies. She argues instead that prior to J.D.'s death, it would have been futile to do so because the hearing officer could not provide any practical relief to address his educational needs or the bullying claims. (Pl.'s Mem. Opp'n Mot. J. at 4-5.)

Under Connecticut law, a party "may request, in writing, a hearing to the local or regional board of education or the unified school district responsible for providing such services whenever such board or district proposes or refuses to initiate or change identification, evaluation or educational placement of or the provision of a free appropriate education to such child or pupil, provided no issue may be raised at such hearing unless it was raised at a planning and placement team meeting at any time." Conn. Gen. Stat. § 10-76h(a)(1) (2003).[1]  A party has "two years to request a hearing from the time the board of education proposed or refused to initiate or change identification, evaluation or educational placement or the provision of a free appropriate

---

[1] This language was removed from the statute on August 20, 2003. 2003 Conn. Leg. Serv. June 30 Sp. Sess. P.A. 03-6 (H.B. 6806).

public education placement to such child or pupil provided . . . such two-year limitation shall be calculated from the time notice of the safeguards is properly given." Conn. Gen. Stat. § 10-76h(3) (2005).  A hearing officer has the authority to "confirm, modify, or reject the identification, evaluation or educational placement or the provision of a FAPE to the child . . . ." Conn. Gen. Stat. § 10-76h(d)(1) (West 2005).

In the month prior to J.D.'s death, Plaintiff was addressing his situation with Defendants Mule and Iacobelli at a PPT; she expressed concerns about the bullying problem and agreed to have J.D.'s intellectual and social skills tested. (Compl. ¶¶ 38-41.) This meeting was held within two years of J.D.'s exit from special education, and, thus, complied with the two-year requirement of § 10-76h(3).  Prior to the PPT, the hearing officer would have lacked jurisdiction over Plaintiff's complaints under § 10-76h(a)(1). After J.D.'s suicide, it would have been futile for Plaintiff to pursue an administrative hearing, as the hearing officer could not offer her adequate relief. See Conn. Gen. Stat. § 10-77h(d)(1) (West 2005).  Nor is this suit an attempt by Plaintiff to use the Court to undermine the administrative process.  Because a hearing officer lacked jurisdiction over Plaintiff's complaints prior to the December PPT and because after J.D.'s suicide a hearing officer could not provide Plaintiff adequate relief, Defendants' Motion for Judgment on the Complaint for Plaintiff's failure to exhaust administrative remedies is denied.

**B.    The Sufficiency of Plaintiff's Statutory and Constitutional Claims**

Defendants next move for judgment on all Counts of the Complaint for failure to adequately plead the relevant statutory and constitutional claims, including the denial of FAPE, the due process and equal protection violations, the failure to train or supervise

claim, and the alleged violations of the Rehabilitation Act and the Americans with
Disabilities Act.  The Court will address each of these arguments separately.

### 1.  Denial of a Free and Appropriate Public Education

Defendants claim that the alleged violations of FAPE and all claims based on the
IDEA and Section 504 of the Rehabilitation Act are time-barred by the applicable statute
of limitations, which provides, "No action founded upon a tort shall be brought but
within three years from the date of the act or omission complained of." Conn. Gen. Stat.
§ 52-577 (West 2005).  As the conduct in question forms the basis for all five counts of
the Complaint, Defendants move to dismiss Plaintiff's claim in its entirety.  In her
opposition memorandum, Plaintiff argues that Defendants' actions constituted a
"continuing course of conduct" which tolled the statute of limitations and thus allows her
complaint to stand.

A finding of a continuing course of conduct tolls the statute of limitations, which
does not begin to run until the course of conduct is complete. See Sanborn v. Greenwald,
39 Conn. App. 289, 295, 664 A.2d 803 (1995) (quoting Handler v. Remington Arms Co.,
144 Conn. 316, 321, 130 A.2d 793 (1957)).  Such a finding must be supported by
evidence "of the breach of a duty that remained in existence after the commission of the
original wrong related thereto" and "[t]he duty must not have terminated before the
commencement of the period allowed for bringing an action for such a wrong."
Sherwood v. Danbury Hosp., 252 Conn. 193, 202-03, 746 A.2d 730 (2000) (internal
citations omitted).

The continuing course of conduct doctrine allows a plaintiff to file suit at a later
date when "the last act alleged to be part of the ongoing pattern of discrimination occurs

within the filing period . . . ."  Velez v. City of New London, 903 F. Supp 286, 290 (D. Conn. 1995) (internal citations omitted); see also Sherwood, 252 Conn. at 202-03.

To prove a continuing course of conduct exception to the statute of limitations, a plaintiff must show "more than the occurrence of isolated or sporadic acts." Doe v. Blake, 809 F. Supp. 1020, 1025 (D. Conn. 1992) (internal citations omitted).  Whether a defendant's actions constitute a continuing course of conduct is a mixed question of law and fact. Giulietti v. Giulietti, 65 Conn. App. 813, 833, 784 A.2d 905 (2001).

Most Connecticut case law regarding the continuing course of conduct doctrine deals with medical malpractice, legal malpractice, or situations in which there are continuing misrepresentations, for example, in cases regarding product liability or product safety. See, e.g., Giglio v. Conn. Light & Power, 180 Conn. 230, 429 A.2d 486 (1990) and Handler, 144 Conn. 316 (1957).  No Connecticut court has addressed whether or not a school administration and education staff's failure to conform to the applicable federal and state special education statutes can constitute a continuing course of conduct.

However, the facts alleged in Plaintiff's Complaint satisfy both prongs of the test described in Sherwood, which requires the breach of a duty that remained in existence after the original wrong was committed and the duty cannot terminate before commencement of the period allowed for bringing an action for such a wrong.  Plaintiff alleges that Defendants owed a duty to J.D. from the time he was identified as a child eligible for special education services under state and federal law until the time of his death and that they were in continuous breach of that duty beginning when J.D. was improperly exited from special education and when he died in January 2002.  Plaintiff also alleges Defendants failed to adequately address the ongoing bullying and harassment

of a learning disabled child despite their personal knowledge of the situation and

Plaintiff's complaints.  Suit was commenced in December 2003, well within three years

of J.D.'s death.  Plaintiff alleges a continuing course of conduct sufficient to withstand

Defendants' Motion.  Defendants' Motion for Judgment on the Pleadings based on the

running of the statute of limitations is denied.

### 2. Due Process

Defendants claim that Plaintiff has failed to sufficiently plead either of the

exceptions to the general rule that the Due Process Clause of the Fourteenth Amendment

does not burden states with an affirmative duty to protect their citizens.  In response,

Plaintiff argues that Defendants acted affirmatively to create a danger to J.D.  These due

process claims are brought pursuant to 42 U.S.C. § 1983.

"Section 1983 does not create any substantive rights but rather provides a remedy

for violations of Constitutional rights or rights under federal law." Crispim v. Athanson,

275 F. Supp. 2d 240, 244 (D. Conn. 2003) (internal citations omitted).  "To state a claim

under Section 1983, the plaintiff must allege: (1) that the challenged conduct was

attributable at least in part to a person acting under color of state law, and (2) that such

conduct deprived the plaintiff to a right, or immunity secured by the Constitution or laws

of the United States." Id. at 244 (citing Dwares v. City of New York, 985 F.2d 94, 98 (2d

Cir. 1993)).

In DeShaney v. Winnebago County Soc. Servs. Dep't, 489 U.S. 189, 195, 109 S.

Ct. 998, 103 L. Ed. 2d 249 (1999), the Court stated that the Due Process Clause does not

burden the state with "an affirmative duty to protect its citizens." Crispim 275 F. Supp.

2d at 245.  When the state enters into a special relationship with an individual by

restraining "their freedom to act on their own behalf," or when the state "itself has created or increased the danger to the individual," however, this general rule does not apply.  Id. (citing Dwares, 985 F.2d at 98-99).  Plaintiff has briefed only the latter and the Court, therefore, will not address the special relationship exception.

The state-created danger exception applies when the state or its agents "commit affirmative acts using their authority to create an opportunity for harm to the plaintiff that would not have otherwise existed." Id. at 246.  It is when the state's actions "increase the vulnerability of a private individual to harm, and that harm occurs, [that] section 1983 liability may be had." Id.  Allegations of a failure to act are insufficient.  A plaintiff must allege that state officials "in some way had assisted in creating or increasing the danger to the victim" to implicate one's due process rights. Dwares, 985 F.2d at 99.

Plaintiff alleges that Defendants knew and failed to act in response to the bullying situation and that at least one Defendant made the situation worse when she refused to move from J.D.'s class a student who was a known threat to him, despite her request.  Plaintiff claims that this student proceeded to harass and assault J.D.  Plaintiff's allegations that Defendants knowingly placed J.D. in a class with a student who was a known threat to him and then refused to move him, in combination with their alleged failure to provide him with the required special education services, are sufficient to state a claim.  Accordingly, Defendants' Motion for Judgment on the Pleadings for the due process violations alleged in Count One is denied.

### 3.  Equal Protection

Defendants also move to dismiss Plaintiff's Equal Protection claims in Count One for failure to sufficiently plead such a violation.  The Equal Protection Clause prohibits

states from "depriving any person within its jurisdiction the equal protection of its laws,"
and "essentially directs that all persons similarly situated be treated alike." Lawrence v.
Texas, 539 U.S. 558, 579, 123 S. Ct. 2472, 156 L. Ed. 2d 508 (2003) (citing City of
Cleburne v. Cleburne Living Center, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L.Ed.2d 313
(1985)).

While "the prototypical equal protection claim involves discrimination against
people based on their membership in a vulnerable class, . . . the equal protection
guarantee also extends to individuals who allege no specific class membership but are
nonetheless subjected to invidious discrimination at the hands of government officials."
Barton v. City of Bristol, 294 F. Supp. 2d 184, 194-95 (D. Conn. 2003) (citing Harlen
Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2000)).  For a plaintiff to
make a "class of one" equal protection claim, he or she must allege that they were
"intentionally treated differently from others similarly situated and that there is no
rational basis for the difference in treatment." Id. (internal citations omitted).  "To
establish such intentional or purposeful discrimination, it is axiomatic that a plaintiff
must allege that similarly situated persons have been treated differently." Gagliardi v.
Vill. of Pawling, 18 F.3d 188, 193 (2d Cir. 1994) (internal citations omitted).

Plaintiff alleges that Defendants "encourage[ed], permit[ted], or acquiesce[ed] in
harassment, bullying and assaults upon J. Daniel on the basis of his disability and
deprived him of equal protection under the law." (Compl. ¶ 45e.)  She also alleges that
Defendants acted in bad faith and with deliberate indifference to J.D.'s rights. (Id. ¶¶ 48-
49.)  Plaintiff's allegations are sufficient to withstand Defendants' Motion because she
alleges Defendants' treatment of J.D. was intentionally based on his disability, making it

reasonable to infer that others without such disabilities were not treated similarly. Defendants' Motion for Judgment on the Pleadings for the equal protection violations alleged in Count One is denied

### 4. Failure to Train or Supervise

Plaintiff seeks to hold Defendants liable under § 1983 for violations of J.D.'s statutory and constitutional rights for failing and refusing to establish necessary procedures, adequately train school employees to deal appropriately with learning disabled children, and establish anti-bullying and harassment policies. (Compl. ¶¶ 46-47.) She states that Defendants failed or refused to provide the proper educational support system for J.D. and provide him with a safe and appropriate educational environment. (Id. ¶ 47.)  She also alleges that Defendants acted in bad faith and with reckless indifference to J.D.'s rights and that they acted with "deliberate indifference" to his rights and well being. (Id. ¶¶ 48-49.)

Defendants argue that Plaintiff failed to sufficiently allege violations of J.D.'s constitutional or statutory rights and liability based on failure to train or supervise cannot be sustained under the law. (Def. Mem. Supp. Mot. J. at 22.)  "No case authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm." Los Angeles v. Heller, 475 U.S. 796, 799, 106 S. Ct. 1571, 89 L. Ed. 2d 806 (1986).  However, as discussed above, Plaintiff has sufficiently alleged violations of the IDEA and J.D.'s constitutional rights to due process and equal protection, rendering this argument unavailing.  Defendants also argue that Plaintiff has not sufficiently pled failure to train or failure to develop policies or procedures.  Plaintiff counters that she has

sufficiently alleged facts that constitute deliberate indifference to the need for training and supervision on the part of the Defendants.

A municipality cannot be held liable under § 1983 on a respondeat superior theory; a plaintiff must show that a government "under color of some official policy, causes an employee to violate another's constitutional rights." Massey v. Town of Windsor, 289 F. Supp. 2d 160, 164 (D. Conn. 2003) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). To establish liability a plaintiff must plead three elements: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Id. (citing Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995)).

"[M]ere assertions . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." Dwares, 985 F.2d at (100). "A single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy." Id.

However, "[i]t is sufficient to show, for example, that a discriminatory practice of municipal officials was so persistent or widespread as to constitute a custom or usage with the force of law or that a discriminatory practice of subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials." Patterson v. County of Oneida, N.Y., 375 F.3d 206, 226 (2d Cir. 2004) (internal citations and quotations omitted). A policy, custom, or practice may also be inferred where "the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." Id. (citing Kern v. City of Rochester,

93 F.3d 38, 44 (2d Cir. 1996) (internal quotations omitted).  A plaintiff can show municipal policymakers acted with deliberate indifference when they "deliberate[ly] [chose] . . . from among various alternatives" not to provide adequate training. Walker v. City of New York, 974 F.2d 293, 297 (2d Cir. 1992) (citing Canton v. Ohio, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)).  Such a choice can be shown when "in light of the duties assigned to specific officers or employees the need for more training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need." Id. (citing Canton, 489 U.S. at 389).

Plaintiff has met her burden at this stage of the proceedings.  Allegations that Defendants' failure to effectively address J.D.'s special education needs and the ongoing bullying situation supports an inference that Defendants' were deliberately indifferent to J.D.'s rights.  Plaintiff alleges that Defendants did not comply with the IDEA beginning in March of 2000 and continuing to J.D.'s death in January of 2002, and despite their knowledge of the harassment and bullying suffered by J.D., as a learning disabled child, they failed to take the appropriate measures to deal with this ongoing situation.  Plaintiff has sufficiently alleged deliberate indifference to the need for training and supervision by the Defendants in Count One of the Complaint, and therefore, their Motion for Judgment on the Pleadings with respect to this claim is denied.

**5.  The Rehabilitation Act and the Americans with Disabilities Act**

Defendants move for judgment on Count Four of Plaintiff's complaint which seeks damages for violations of the Rehabilitation Act, 29 U.S.C. § 794 and the

Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq.  ("ADA"). (Compl. ¶¶ 57-63.)

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, provides that "[n]o otherwise qualified individual with handicaps . . . shall, solely by reason of her or his handicap, . . . be denied the benefits of . . . any program or activity receiving Federal financial assistance . . . ." P.C. v. McLaughlin, 913 F.2d 1033, 1041 (2d Cir. 1990).  To establish a violation of this section a "plaintiff must demonstrate (1) that he has a disability for purposes of the Rehabilitation Act, (2) that he is 'otherwise qualified' for the benefit that has been denied, (3) that he has been 'denied the benefits' solely by reason of his disability, and (4) that the benefit is part of a 'program or activity receiving Federal financial assistance.'" A.W. v. Marlborough Co., 25 F. Supp. 2d 27, 30 (1998) (citing Flight v. Gloeker, 68 F.3d 61, 63 (2d Cir. 1995)).  "The clearly established law concerning § 504 indicates that its central purpose is to assure that handicapped individuals receive evenhanded treatment in relation to the nonhandicapped." McLaughlin, 913 F.2d at 1041 (internal citations omitted).

Additionally, a plaintiff must allege discrimination on the basis of disability. "While both the Individual with Disabilities Education Act, 20 U.S.C. § 1400 et seq., and Section 504 mandate that local education agencies provide a FAPE to children with disabilities, the scope of the protection afforded under each of these statutes is different. Section 504 provides relief from discrimination, whereas the IDEA provides relief from inappropriate educational placement decisions, regardless of discrimination.  Based on this distinction courts have found that in order to establish a Section 504 violation, a plaintiff must demonstrate bad faith or gross misjudgment in addition to the denial of a

FAPE." <u>Marlborough Co.</u>, 25 F. Supp. 2d at 31-32 (internal citations and quotations omitted).

      To recover "compensatory damages . . . under the ADA and the Rehabilitation Act," a plaintiff must prove intentional discrimination. <u>Bartlett v. N.Y. Bd. of Law Exam'rs</u>, 156 F.3d 321, 331 (2d Cir. 1998). "[I]ntentional discrimination against the disabled does not require personal animosity or ill will, . . . [it] may be inferred when a policymaker acted with at least deliberate indifference to the strong likelihood that a violation of federally protected rights will result from the implementation of the [challenged] policy . . . [or] custom." <u>Id.</u> (internal citations omitted).

      Plaintiff alleges that the bullying, harassment, and assaults against J.D. were "more pervasive and severe because of his disability" and created "an abusive educational environment" that Defendants allegedly contributed to through their acts and omissions. (Compl. ¶¶ 11, 60-61.)  Defendants object to Count Four because Plaintiff failed to "plead and prove bad faith or gross misjudgment, along with denial of FAPE" and did not identify a specific "policymaker allegedly responsible for the intentional discrimination." (Def. Mem. Supp. Mot. J. at 24-25.)  In response, Plaintiff argues that the bad faith allegations in Count One satisfy the requirement.  The parties' memoranda focus on the intentional discrimination requirement of § 504 and not the four-pronged test described in <u>McLaughlin</u>.  However, the Court finds that Plaintiff's allegations satisfy the test because she alleges that J.D. had a disability for the purposes of the Rehabilitation Act (Compl. ¶ 10-12), because of his disability he was denied a benefit that he was qualified for (<u>Id.</u> ¶¶ 60-62), and the program received Federal financial assistance. (<u>Id.</u> ¶ 14).

The Court also finds Plaintiff's allegations of bad faith in Count One sufficient for the intentional discrimination requirement under the Rehabilitation Act and the ADA. Defendants' conduct detailed in Count One also forms the basis for Plaintiff's claims against Defendants in Count Four of the Complaint; these allegations are regarded as true for the purposes of this motion.  While Plaintiff does not specifically identify a policymaker, it is reasonable to infer that one or all of the Defendants made such decisions that affected J.D.'s special education placement and the bullying situation. However, the Supreme Court recently ruled that punitive damages are not available under the ADA or Section 504 of the Rehabilitation Act. Barnes v. Gorman, 536 U.S. 181, 122 S. Ct. 2097, 153 L. Ed. 2d 230 (2002) (likening these acts to contracts between the federal and state governments).  Therefore, Defendants' Motion for Judgment on the Pleadings on Count Four of the Plaintiff's Complaint is granted only to the extent that she seeks punitive damages under the Rehabilitation Act and the ADA.

F.    **Individual Liability under the Rehabilitation Act and the ADA**

Defendants contest all individual liability under Section 504 and the ADA, arguing that it is not available under either statute.  Plaintiff did not address this argument in her opposition memorandum.  The issue of individual liability under the Rehabilitation Act and the ADA is unsettled. Compare Fitzpatrick v. Pa. Dept. of Transp., 40 F. Supp. 2d 631, 638 (E. D. Pa. 1999) (Individual liability is not available because "[t]o hold otherwise would be inconsistent . . . [with] the holding that Title VII does not provide for individual liability and that the Rehabilitation Act, the ADA, and Title VII should be interpreted similarly . . . .") with Johnson v. N.Y. Hosp., 897 F. Supp 83, 84 (S.D.N.Y. 1995) ("[I]ndividuals who are responsible for the discriminatory decisions of

organizations can be personally liable under the Rehabilitation Act.").  Furthermore,
most of these cases deal with employment discrimination suits, and do not neatly apply to
the facts of the case at bar.

In Robinson v. Gorman, 145 F. Supp. 2d at 206, the court allowed a plaintiff to
sue defendants in their individual capacity under the Rehabilitation Act.  The court held
that the defendant landlords were not exempt from individual liability under the
Rehabilitation Act because they were "ostensibly in a position to accept or reject federal
funds in connection with the housing program in which they and the Plaintiff
participated" and employment discrimination case law was not applicable. Id.

The only Defendant in this case with the authority to accept or reject federal
funding would be the Defendant Board.  As such, and in light of the Plaintiff's failure to
argue to the contrary, Defendants' Motion for Judgment on the Pleadings for Count Four
against Ruocco, Iacobelli, and Mule in their individual capacity is granted.

### G.    Supervisory Liability

Defendants claim that Plaintiff has failed to sufficiently plead any basis for the
liability of Defendant Ruocco, who, at all relevant times, was the Superintendent of
Schools.  Plaintiff's opposition memorandum did not address this claim.

In the Second Circuit, it is well settled that personal involvement is required to
establish a § 1983 claim. "[W]here damages are sought in a § 1983 action, the defendant
must be responsible for the alleged constitutional deprivation: [T]he general doctrine of
respondeat superior does not suffice and a showing of some personal responsibility of the
defendant is required." Al-Jundi v. Rockefeller, 885 F.2d 1060, 1065 (2d Cir. 1989)
(internal citations omitted).  While personal responsibility is a "prerequisite to an award

19

for damages under § 1983, direct participation is not always necessary." Id. at 1066; see also Colon v Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (internal citations omitted).

A plaintiff may establish the personal involvement of a supervisory official when the official: "(1) participated directly in the alleged constitutional violation, (2) . . . [was] informed of the violation through a report or appeal, failed to remedy the wrong, (3) . . . created a policy or custom under which the unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) . . . was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) . . . exhibited deliberate indifference to the rights of others by failing to act on information indicating that unconstitutional acts were occurring." Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246 (2d Cir. 2001) (internal citations omitted).

Plaintiff alleges that Defendant Ruocco knew or by reasonable care should have known that J. D., who was identified as learning disabled, was harassed, teased, bullied, assaulted, and threatened with violence while attending Washington. (Compl. ¶ 22.)  She also alleges that Defendant Ruocco knew or by reasonable care should have known that he was subjected to constant bullying and assaults in the seventh grade and "failed to take action to prohibit or prevent or at least deter such conduct." (Id. ¶ 43.)  These allegations are sufficient under the test described in Newburgh Enlarged Sch. Dist.; they support an inference that Defendant Ruocco was informed of a violation and allowed the policy or custom to continue or that she was deliberately indifferent to the rights of others through her failure to act.  Accordingly, Defendants' Motion for Judgment on the Pleadings on all counts against Defendant Ruocco is denied.

### H.   The Conspiracy and 42 U.S.C. § 1986 Claims

Defendants move for judgment on Count Two of the Complaint, which alleges a conspiracy under 42 U.S.C. § 1985(3) and common law for violations of J.D.'s due process and equal protection rights as guaranteed by the Fourteenth Amendment of the United States Constitution.  They also move for judgment on Count Three, which alleges a failure to prevent or aid in preventing a violation of J.D.'s rights under 42 U.S.C. § 1986.  Primarily, they contend that Plaintiff failed to allege facts that constitute a "concerted action, let alone a meeting of the minds" and that the Complaint does not set forth facts that suggest that Defendants were motivated by "racial or otherwise class-based invidious discriminatory animus." (Def. Mem. Supp. Mot. J. at 30.)  They argue that without a valid § 1985 claim, the § 1986 claim must be dismissed as well. (Id. at 31.) Plaintiff's opposition memorandum is silent on these issues.

### 1.  42 U.S.C. § 1985(3) and 42 U.S.C. § 1986

Section 1985(3) reads in relevant part, "If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

"To state a cause of action under the deprivation clause of § 1985(3), a plaintiff must allege (1) a conspiracy, (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person of property, or a deprivation of a right or privilege of a citizen of the United States." Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999). "A conspiracy need not be shown by proof of an explicit agreement but can be established by showing that 'the parties have a tacit understanding to carry out the prohibited conduct." Id. (internal citations and quotations omitted). The conspiracy must also be motivated by a class-based, invidious discriminatory animus. Id.

Plaintiff alleges that Defendants independently knew, or should have known, that J.D. was being bullied and harassed at Washington. She also claims that she had informed Defendants at least once of the situation and thus should have recognized that J.D.'s rights were being violated. (Compl. ¶¶ 32, 38-40, 43-46.) Plaintiff alleges that J.D. was transferred to a program for troubled children without parental notification, where the bullying problem persisted. (Compl. ¶ 34-37.) Generally, she alleges that all Defendants knew of the bullying situation and J.D.'s learning disabilities, yet failed to act or acted and made the problem worse.

In Count Three, Plaintiff conclusorily states that Defendants individually and in concert conspired to violate J.D.'s rights under the Fourteenth Amendment. (Compl. ¶ 53.) Standing alone, this allegation is not enough to state a claim for conspiracy under 1985(3) and may fairly be described as "vague" or "conclusory." See Friends of Falun Gong v. Pacific Cultural Enter., Inc., 288 F. Supp. 2d 273, 279 (E.D.N.Y., 2003); see also Powell v. Workmen's Comp. Bd. of N.Y., 327 F.2d 131, 137 (2d Cir. 1964). While

Plaintiff does not allege a specific agreement, the facts set forth in the Complaint support an inference of a tacit agreement by Defendants to carry out the alleged violations of J.D.'s rights and thus sufficiently allege a conspiracy under 42 U.S.C. § 1985(3). Because the alleged conspiracy was intentionally directed at a learning disabled student (Compl. ¶ 49) the allegations support the proposition that it was motivated by discriminatory animus.

Because Plaintiff has sufficiently alleged a conspiracy under 1985(3), Count Three may proceed as well. "Liability under § 1986, which permits an action against a person who had the power to prevent or aid in the prevention of a wrong mentioned in 1985, but who neglected or refused to do so is dependent on the validity of a claim under § 1985." Dwares, 985 F.2d at 101 (internal quotations omitted). As the Court has found a viable § 1985 claim, the § 1986 claim is sufficient as well. Defendants' Motion for Judgment on the Pleadings for Count Two as it alleges a conspiracy under § 1985(3) and for Count Three is denied.

### 2. Common Law Conspiracy

Plaintiff's allegations are also sufficient under Connecticut civil conspiracy law, which requires "(1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff." Larobina v. McDonald, 274 Conn. 394, 876 A.2d 522 (2005) (internal citations omitted). The alleged conspiracy was between more than two people, to deprive a student of his rights under the Fourteenth Amendment. (Compl. ¶ 53-54.) Plaintiff alleges that one or more of the conspirators acted in

furtherance of this scheme by failing to comply with the relevant education statutes or contributing to the abusive environment J.D. was subjected to and it is alleged that J.D. was harmed as a result of these alleged acts. (Id. ¶ 46.)  Defendants' Motion for Judgment on the common law conspiracy claim as set forth in Count Two is denied.

>  **F.      Qualified Immunity.**

The individual Defendants also move to dismiss all claims against them on the basis of qualified immunity.  They maintain that Plaintiff has failed to adequately allege a constitutional or statutory violation and thus all claims against them should be summarily dismissed.  Alternatively, they argue even if Plaintiff has adequately pled such violations, the doctrine of qualified immunity is applicable because it was not clear at the time that their actions violated the United States Constitution or federal law.  (Def. Mem. Supp. Mot. J. at 33.)  Plaintiff counters this argument by maintaining that at the time of Defendants' alleged conduct, it was clear that federal and state education statutes and the Constitution protected J.D.  She also argues that no exemption applied to their actions and that discovery is necessary to determine if Defendants believed that their actions were reasonable. (Pl.'s Mem. Opp'n Mot. J. at 12-13.)

A ruling on a qualified immunity defense "should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." Saucier v. Katz, 533 U.S. 194, 200, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).  The Court has "repeatedly . . . stressed the importance of resolving immunity at the earliest possible stage in litigation." Id. (internal citations omitted).

The Second Circuit has held that there are three circumstances in which a government official, sued in his or her individual capacity, is entitled to qualified

immunity: "(1) if the conduct attributed to him was not prohibited by federal law; . . . or (2) where the conduct was so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time it occurred; . . . or (3) if the defendant's action was objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken." Rapkin v. Rocque, 228 F. Supp. 2d 142, 145-146 (D. Conn. 2002) (citing Munafo v. Metro. Transp. Auth., 285 F.3d 201, 210 (2d Cir. 2002)).

As an initial inquiry, a court ruling on a qualified immunity defense must first address whether "taken in light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier, 533 U.S. at 201 (internal citations omitted). As the Court has found Plaintiff has stated a claim for violations of J.D.'s constitutionally protected rights to due process and equal protection, the first step in the analysis is satisfied. (See part II, B, 2-3.) The second inquiry is whether J.D.'s rights were "clearly established." Id.

The Second Circuit has identified two principles to guide the analysis of whether or not a right is clearly established: (1) what would a reasonable person in the [government actor's] position know about the appropriateness of his conduct under federal law; and (2) that "the absence of legal precedent addressing an identical factual scenario does not necessarily yield a conclusion that the law is not clearly established." Newburgh Enlarged Sch. Dist., 239 F.3d at 251.

According to the allegations in the Complaint, J.D., as a learning disabled or neurologically impaired individual, had rights under 20 U.S.C. § 1400 et seq., Connecticut General Statutes § 10-220, 29 U.S.C. § 794, 42 U.S.C. § 12101 et seq., and

42 U.S.C. § 1983. While these federal and state statutes may be unfamiliar to the general public, the Court concludes that they establish rights that are "sufficiently clear" to school administrators and educators. Learning disabled students have clearly established rights under statutory schemes and the Constitution and legal precedent identifies those rights, and the burden is not on the parents of these children to inform school administrators of those rights as suggested in the Defendants' Memorandum. Accordingly, Defendants' Motion for Judgment based on qualified immunity is denied.

> **G.    The State Law Negligence Claim.**

Defendants also move for judgment on Count Five of the Plaintiff's Complaint in which she alleges that Defendants breached their duty to J.D. to prevent and protect him from intentional harm, to provide J.D. with a "safe and productive learning environment," and to "supervise the students of Washington or to take steps to prevent the acts and offenses described" in the Complaint. (Compl. ¶¶ 66-67.) Plaintiff contends that this breach resulted in the creation of an imminent harm to J.D. and proximately caused him "severe psychological harm; physical pain and suffering; fear for his life and well-being; and fear of continued bullying." (Id. ¶ 69.) Defendants move for judgment on this Count on the doctrines of sovereign and governmental immunity.

> **1.    Sovereign Immunity and the Plaintiff's State Law Claim**

Defendants argue that the acts complained of by Plaintiff in Count Five relate to their state delegated responsibility of providing education and their administration of the physical premises of the school and therefore the doctrine of sovereign immunity bars this claim. In her opposition memorandum, Plaintiff states this Count does not address Defendants' actions while providing special education services or educational services

under the IDEA, but instead focuses on their failure to supervise students so sovereign immunity does not apply. (Pl.'s Mem. Opp'n Mot. J. at 14.)

In <u>Purzycki v. Fairfield</u>, 244 Conn. 101, 708 A.2d 937, 125 Ed. Law Rep. 684 (1998), the Court determined that the doctrine of sovereign immunity did not apply to the local board of education in their capacity of supervising students. <u>Id.</u> at 112.  The Court reasoned that "[t]he duty to supervise students is performed for the benefit of the municipality," <u>id.</u> (citing <u>Burns v. Bd. of Educ.</u>, 228 Conn. 640, 638 A.2d 1, (1994)), and hence did not "operate to control or interfere with activities of the state." <u>Id.</u> (internal citations omitted).  The plaintiff student in <u>Purzycki</u> was injured when he was tripped by a fellow student in an unsupervised hallway.  In Count Five, Plaintiff alleges Defendants' failure to supervise the students resulted in the bullying and harassment of J.D.  These allegations do not regard  Defendants' provision of special education services. That the bullying situation was enhanced by the fact that J.D. was learning disabled, does not take Count Five outside the realm of failure to supervise.  Defendants' Motion for Judgment on Count Five based on sovereign immunity is denied.

## 2. Governmental Immunity

Alternatively, the individual Defendants argue that they are entitled to governmental immunity with respect to Plaintiff's negligence claim.  Plaintiff asserts that she has sufficiently alleged that J.D. was an "identifiable person subjected to imminent harm" and that governmental immunity does not apply.

Historically, municipal employees have been held personally liable for their own torts.  However, the doctrine of governmental immunity has been offered to these employees while "in the performance of a governmental duty, but [they] may be liable if

[they] misperform[] a ministerial act, as opposed to a discretionary act . . . .  The word
'ministerial' refers to a duty which is to be performed in a prescribed manner without the
exercise of judgment or discretion." Burns, 228 Conn. at 645 (internal citations omitted).
Because Plaintiff concedes that Defendants acts were discretionary, it is necessary for the
Court to determine if an exception applies.

In cases "where the circumstances make it apparent to the public officer that his
or her failure to act would be likely to subject an identifiable person to imminent harm"
the doctrine of governmental immunity does not apply. Id., 228 Conn. at 645.  A plaintiff
must establish: "the immanency of any potential harm, the likelihood that harm will
result from a failure to act with reasonable care, and the identifiability of the particular
victim." Id. at 646 (citing Evon v. Andrews, 211 Conn. 501, 507-508, 559 A.2d 1131
(1989)).

The facts in the Complaint support an inference the J.D., a learning-disabled child
who was constantly bullied and harassed, was an identifiable victim.  She alleges that he
was exposed to imminent harm that made it likely that he would be injured if Defendants
failed to act with reasonable care.  Plaintiff has sufficiently pled the identifiable victim
exception to the doctrine of governmental immunity and Defendants' Motion for
Judgment on Count Five is denied.

## IV.    CONCLUSION

For the reasons stated herein, Defendants' Motion for Judgment on the Pleadings
[Doc. No. 50] is **granted** with respect to the individual liability of Defendants Ruocco,
Iacobelli, and Mule in Count Four and with respect to punitive damages under Count
Four **and denied** with respect to Counts One, Two, Three, and Five.

SO ORDERED.

Dated at New Haven, Connecticut, August  _22_ , 2005.


_____/s/_____
Peter C. Dorsey
United States District Judge